IN THE MATTER OF THE PETITION OF GEORGE W. MEAD TO
REDUCE AN ASSESSMENT.*

*City of Brooklyn— vacating assessments in — burden of proof— sec. 13 of chap. 633 of 1875.*

Since the passage of section 13 of chapter 633 of 1875 the statutory remedy, by petition, against void or avoidable assessments for local improvements in the city of Brooklyn, is confined to that portion of any such void or voidable assessment which is in excess of the fair value of the work actually done and the materials actually furnished, and which is, consequently, the result of fraud or extravagance.

As it is only that portion of the assessment which is in excess of the fair value of the actual local improvement which is subject to review by petition, it rests upon the petitioner to allege and prove the existence and amount of such excess.

As the right to review an assessment by petition was created by an amendment to the city charter, which amendatory act had a charter title, such right could be constitutionally abridged or taken away by another amendment to the charter, having also a charter title. Any other construction would make the grant of the remedy by petition unconstitutional.

APPEAL from an order made at the Special Term, reducing an assessment on certain lots of the petitioner from $243.18 on each lot to the sum of fifty-dollars on each of them.

The application was made to have an assessment on certain lots belonging to the petitioner reduced, on the ground that the amount of such assessment exceeded one-half of the assessed valuation of the lots and was in violation of section 5 of chapter 169 of 1861.

*William C. De Witt*, for the city of Brooklyn, appellant.

*George W. Mead*, in person, and *Jesse Johnson*, for the respondent.

DYKMAN, J. :

This case presents a most important statute for construction. It is contained in section 13 of chapter 633 of the Laws of 1875, and is as follows :

* See Matter of Adams, *post*, 355.

Section 30. " None of the provisions of any act of the legislature of this State shall enable or permit any court to vacate or reduce any assessment in fact or apparent, whether void or voidable, on any property, for any local improvement in the city of Brooklyn otherwise than to reduce any such assessment to the extent the same may have been, in fact, increased in dollars or cents by reason of fraud or irregularity, and in no event shall that proportion of any such assessment which is equivalent to the fair value of any actual local improvement, be thereby disturbed."

This statute does not abridge the powers of this court otherwise than in respect to a single remedy against assessments granted by special legislation. Actions in equity or proceedings under the writ of *certiorari* being within the original jurisdiction of the Supreme Court are not affected.

The subject for consideration is, therefore, limited to the summary remedy by petition. This remedy was first instituted in and for the city of New York by a special act (chap. 338) passed April 17, 1858, entitled " An act in relation to frauds in assessments for local improvements in the city of New York." This act enabled courts in that city, on petition by a party aggrieved, and after short notice to the city, to investigate the proceedings leading to any assessment, and upon the discovery of fraud or irregularity, to vacate the same by a summary order. This remedy was extended to the city of Brooklyn by a section in an act to amend the charter of Brooklyn, passed in 1862, and it has since been regulated and modified in and for Brooklyn by several charter amendments. (See Laws of 1862, p. 205, chap. 63, § 43 ; id., 1871, chap. 483 ; id., 1873, chap. 863, § 38.)

As the title to the act which instituted it indicates, this summary judicial proceeding owes its existence, no doubt, to the frauds and extravagance which characterized, at one time, the internal administration of the affairs of the city of New York, and, to a less extent, the city of Brooklyn. As the old common-law writ of *certiorari* afforded a sufficient and appropriate means for trying the statutory validity of any assessment, it is not likely the legislature had in view mere technical illegalities. Nevertheless, as such was the language of the act, the courts were compelled to permit the remedy to extend as well to questions of statutory regularity as to matters

of substantial fraud. It became, therefore, not merely a swift means of redress against the burdens imposed by official corruption and fraudulent contracts, but also a ready process by which, upon barely technical grounds of law, immense amounts of public indebtedness were taken from those who should have fairly borne the burdens, and thrown upon the city at large. It is a matter of public judicial history that large assessments for which there were outstanding city bonds, were vacated because an advertisement had been omitted from one out of many newspapers, or the common council had acted in one capacity rather than another, or some preliminary formality had been neglected, and for a large number of other like subtle reasons having little support in sound justice ; and it has been said that upward of 1,000 petitions of this character were pending in this court upon the adoption of the statute now under construction.

It is obvious, therefore, that in the adoption of this statute the legislature intended to limit the power of the courts to that portion of any assessment which might be the product of fraud or extravagance. While upon the one hand the party assessed should not be held liable for the corruption or improvidence of city officials, upon the other that portion of the completed city which had hitherto borne the expense of its own local improvements should not be compelled, by mere technical defects, to bear the same expense for the new and incomplete portions of the city. At least, in view of the fact that the remedy by *certiorari* afforded full redress against purely statutory irregularities, there could be no just legislative motive for adding thereto a summary remedy by petitions.

Hence in 1873 the legislature provided with reference to this remedy, " that whenever any irregularity or fraud shall be shown in any such assessment proceedings, whereby the expense of any local improvement has been unlawfully increased, the court shall thereby only have authority to reduce the assessment by as much as it had been increased by such fraud or irregularity." (Laws of 1873, chap. 863, § 38.) Under the severe rules governing statutory construction it was held that where the irregularity was jurisdictional the increase referred to in this statute covered the whole amount involved, or was from nothing to the amount assessed. Then,

at last, the legislature passed, in behalf of the city of Brooklyn, the statute of 1875 (chap. 633), which, in precise and explicit language in reference to void or voidable assessments (in § 13), prescribes that in no event shall that proportion of any such assessment which is equivalent to the fair value of any actual improvement, be by this remedy disturbed.

It seems, therefore, from the substance and history of this legislation, that the statutory remedy by petition against void or voidable assessments in the city of Brooklyn is now confined to that portion of any such assessment which is in excess of the fair value of the work actually done and material actually furnished, and is, consequently, the result of fraud or extravagance. Courts will not, by subtle construction, defeat an object of the legislature so persistently pursued and at length plainly attained.

Having thus reached a clear construction of the statute in question, the points presented by the respondent are easily disposed of. It being established that the amount contained in any assessment in excess of the fair value of the actual local improvement is the only subject-matter for the exercise of the remedy by petition, it is manifest, from the most elementary rules of evidence, that the petitioner must prove the existence of such an amount. This excess is the sole cause of action, and until, as matters of fact, it is disclosed, the court is forbidden to act. Indeed, this remedy never had any thing to do with lawful and fair assessments. It can only reduce void and voidable assessments the amount they have been increased; not by reason of pure invalidity, because that would include the whole, and render the statute meaningless; but the amount they have been in fact increased in dollars and cents by reason of such fraud; or, if there be only statutory irregularity, the amount in which such irregular assessment may exceed the fair value of the actual local improvement involved. The whole statute must be taken together, and it confines this remedy to the excessive charge.

The affirmant in any action or proceeding must show each essential ingredient of his cause of action. In actions for malicious prosecution the plaintiff must allege and prove want of probable cause, and in summary proceedings to eject a tenant for holding over without permission, the landlord must affirmatively prove the

want of permission. Under the statute in question the remedy is restrained to the amount in excess. This amount is not merely an ingredient of the petitioner's cause of action; it is his whole cause of action. It is not simply a condition to the exercise of the remedy; it is the only subject-matter upon which the remedy can act at all. It is obvious, therefore, that the petitioner must disclose it before the court can move; and to say that it can be taken as presumptively proven by the appearance of statutory irregularity, is to violate the whole spirit and purport of the act, which, in terms, protects against just such technical disturbance, that which concededly is void or voidable and exist only in fact or appearance.

In the present proceeding it appearing by the assessment roll that a certain proportion of the assessment was in excess of a limitation to one-half of the value of the property assessed prescribed by the act of 1861 (chap. 169, § 5), and hence invalid, the court below, without taking further proof, assumed the power to cancel the invalid amount. Here was obvious error. It is in respect to void or voidable assessments, in whole or part, that the statute provides that that proportion thereof (*i. e.*, of that which is void) which is equivalent to the fair value of the actual local improvement, shall in no event be disturbed. If the mere appearance of the invalidity were sufficient then the restraint upon the remedy is nugatory, and the whole object of the statute may be defeated. What if it does appear that the assessment is, in whole or part, void or voidable? It is in respect to that very thing that the remedy is limited.

It is not necessary to notice the constitutional objection that such a provision restricting a court remedy cannot be included in a charter act. The remedy itself was granted for the city of Brooklyn by a charter act, and never otherwise. It has been too frequently acted upon by our highest courts to be disturbed, and to hold that it was not thus lawfully granted would turn the petitioner out of court. If, then, the remedy might be granted by a charter act, it could be modified, altered or repealed by a charter act. The act giving the remedy, and the act restricting it, springs from the same source of legislative power alone. The remedy which the legislature could establish in the charter act of 1862, it could alter in the charter act of 1875, and the petitioner must use it as altered in 1875, or he cannot use it at all.

It is idle to endeavor to imply authority outside of charter acts from the act of 1871. True, that act has not, in terms, a charter title, but it consists of a single section which provides that section 43, chapter 63 of the Laws of 1862 (the amendment to the charter giving the present remedy in Brooklyn and with a charter title), shall read as follows — rewriting the sections in different form.

This merely amends the act of 1862 through the same form it was originally passed. Indeed, according to the express terms of the act of 1871, its single section must be read as section 43 of the act of 1862, and under the title of that act of 1862. This leaves the whole legislation under charter titles. Again, the title to the act of 1871, though not in precise terms is still in substance, a charter title. (*People ex rel. Rochester* v. *Briggs*, 50 N. Y., 553.) The criticism founded on the fact that the statute in question is made a substitute for the last section of the charter which reads, "This act shall take effect immediately," instead of some other section, is frivolous. The legislature adds, in the amendment, another section to the same effect, and if it did not, the Constitution fixed the period for the commencement of the operation of all laws containing no specific provision on the subject. This, like all the other subtleties employed to vacate assessments only enforces the necessity of applying the restraints imposed by the legislature, limiting the courts in summary proceedings to matters of substantial grievance.

The order of the Special Term must be reversed, with costs.

BARNARD, P. J., concurred; GILBERT, J., not sitting.

Order reversed, with costs and disbursements.